## CHATTERTON v. WAVERLY TERMINAL CO.

No. 6179.

District Court, D. New Jersey.
April 15, 1943.

Coult, Satz, Morse & Coult, Joseph Coult and Joseph Coult, Jr., all of Newark, N. J., for plaintiff.

Riker, Marsh & Shipman and Irving Riker, all of Newark, N. J., for defendant.

FAKE, District Judge.

This is a civil action by plaintiff for commissions alleged to be due for procuring the approval of a loan from the RFC Mortgage Company to the defendant.

### Findings of Fact

1. At the time of the commencement of the action and at the time of trial, the plaintiff's decedent, Robert T. Chatterton, was a resident and citizen of the State of New York, and the defendant, Waverly Terminal Company was, and still is, a corporation organized and existing under the laws of the State of New Jersey and a resident and citizen thereof. The amount in controversy in this action exceeds, exclusive of interest and costs, the sum or value of $3,000.

2. On December 3, 1935 defendant filed an application for a mortgage loan from the RFC Mortgage Company seeking a loan of $775,000; at that time there was due to the City of Elizabeth the sum of $760,000 for unpaid taxes and interest accrued against the premises to be mortgaged, and the City of Elizabeth had instituted proceedings for the foreclosure of its tax liens. The object of the loan was to pay off these taxes.

3. On February 6, 1936, plaintiff's decedent and defendant entered into an agreement, as follows:

"In consideration of services rendered by Mr. Chatterton of Cross and Brown in conferring with Jesse Jones of RFC Corporation, we agree to pay to the said Mr. Chatterton, the sum of one per cent (1%) of any amount which the RFC may lend to Waverly Terminal Company by virtue of application previously filed with New York Office of the Reconstruction Finance Mortgage Company.

"It is further understood that he is to receive this commission of 1% for the said loan if made through the RFC Mortgage Company, or through Reconstruction Finance Corporation, or whether it be made directly to the Waverly Terminal Company or indirectly for the benefit of said company.

"The above commission is to be payable only if it does not conflict with the regulations of the RFC and with the understanding that it is to be the only such commission due to any party.

"We further agree to pay expenses incident to the trip of the said Mr. Chatterton to Washington in connection with said loan.

"Waverly Terminal Company
"Adrian Riker

"Pres."

4. On the night of February 6, 1936, Chatterton left for Washington and saw Mr. Jesse Jones there the next day. This conference with Mr. Jones and subsequent conferences eventuated in a resolution by the RFC Mortgage Company dated June 9, 1936, approving a loan to defendant of $600,000 to cover certain real estate, and on the terms and conditions set forth in Schedules B, C and D of the Answer in this cause as by reference thereto will more fully and at large appear. This resolution also contained an approval of "commission to R. T. Chatterton of $3,000.00".

5. Defendant attempted to settle the arrearages of taxes and interest with the City of Elizabeth for the sum of $649,000 but by resolution of October 5, 1936 the city rejected the offer.

6. Thereafter defendant wrote the following letter to the RFC Mortgage Loan Company:

"December 9th, 1936
Mr. W. J. Farthing,
R. F. C. Mortgage Corporation,
33 Liberty Street,
New York City, New York.
Dear Sir:—
As you doubtless have heard, the City of Elizabeth has declined to accept our offer of $650,000.00 in settlement of their tax lien. This amount being all that was available in connection with the proposed mortgage loan from the R. F. C., we have been compelled to adopt other plans, and have concluded an arrangement with the City for the payment of their back taxes over a period of years.

We expect this plan to be satisfactory to all concerned and to fully protect the Durant bondholders; and are therefore, advising you that we do not intend to proceed further toward obtaining a loan from the R. F. C.

Allow us to thank you personally for the very kind cooperation you have shown in this matter.

Very truly yours,
Waverly Terminal Co..
By————————".
AR/EAC

It is noted here that the approved loan was not $650,000 but $600,000 as appears by the RFC resolution of June 9, 1936, and the offer of settlement with the city was $649,000 as appears by the city resolution and not $650,000 as stated above.

7. From the foregoing letter it appears that defendant rejected the counter offer of the $600,000 loan because it was insufficient to meet the tax requirements and for the reason that defendant was able to settle the taxes with the city by amortization over a period of time. It was therefore not within the power of defendant to give the security required for the loan because the prior tax liens exceeded the loan by upwards of $170,000.

8. It appears that Chatterton was personally acquainted with Mr. Jesse Jones and had been connected with him years before in certain large real estate transactions.

9. A loan of $500,000 had been tentatively approved by Mr. Riley of the New York branch of the RFC Mortgage Company before Chatterton had been retained and Chatterton was retained for the purpose of obtaining the sum of $775,000 as first applied for, or at least a sum sufficient to pay the tax liens. This is spelled out in viewing the case as a whole.

10. The Reconstruction Finance Corporation owns all the capital stock of the RFC Mortgage Company.

### Conclusions of Law

(1) The RFC Mortgage Company was formed for the purpose of carrying out one of the objects of the Reconstruction Finance Corporation.

(2) The Reconstruction Finance Corporation Act, Title 15 U.S.C.A. § 605b (i), provides:

"Fees and commissions

"(i) No fee or commission shall be paid by any applicant for a loan under the provisions of this section in connection with any such application or any loan made or to be made under this section, and the agreement to pay or payment of any such fee or commission shall be unlawful."

(3) Circular No. 1 (Revised) April 1935, entitled "The RFC Mortgage Company, Information Regarding Real Estate Mortgage Loans," provides as follows: "Payment of bonuses, fees, or commissions for the purpose of, or in connection with obtaining loans from the Company will not be permitted. An applicant may pay reasonable compensation for services rendered by attorneys, accountants, etc., in preparing his application, but not in any event for alleged services in connection with the presentation of the application to the Company. All such charges must be

fully disclosed. Objection will be made to any fee based upon a percentage of the loan and to fees or charges made contingent upon the obtaining of a loan."

■ (4) The foregoing statute and circular make void the commission agreement of February 6, 1936 and there can be no recovery thereon in this suit.

■ (5) The provisions of the statute and the circular could not be waived either by the parties hereto or by the RFC Mortgage Company itself, since the formation of the Mortgage Company could not result in an avoidance of the statute and the circular was in line with and in aid of the statute. Moreover the defendant here was protected by both the statute and the circular and public policy forbids that either the defendant which was in financial distress or those with whom it dealt, should have it in their power to waive the mandatory provisions involved.

■ (6) The agreement of February 6, 1936 was silent as to the amount of the loan contemplated, therefore the reasonable construction to be placed upon the language used therein requires a finding that a loan was consummated before plaintiff can recover. The commission of 1% was to be paid not for the approval of a loan but in the language of the agreement "on any amount which the RFC may lend to Waverly Terminal Company." To reason otherwise is to leave the sphere of interpretation and reword the contract.

(7) In view of the language of the statute and the language of the circular above quoted, it is not necessary to pass upon the question of the invalidity of the commission agreement on the ground of its conflict with public policy.

Judgment will be entered in favor of the defendant with costs to be taxed.